B. WARREN STONE V. NICHOLAS H. DARNELL.

Where the proof was that after the levy of execution, the defendant in execution,
who was then living in a rented house, built a house on the land levied on, and
moved into it before the sale, which was at the next sale day; and the Court
instructed the jury that if the defendant in execution resided on the land at
the date of the sale, it was his homestead and exempt from forced sale; the
jury having found for the defendant in execution, it was held that the charge
was not erroneous in application to the facts, and the judgment was affirmed on
the ground that the time of the sale is the time to which we must look in
ascertaining the fact of homestead or not, in the absence of allegation and
proof of a fraudulent device to use the homestead provision as a means of
hindering and delaying or defrauding creditors.

Appeal from Dallas.    Tried below before the Hon. Nat. M.
Burford.

Suit by appellant against appellee to recover fourteen and a
half acres of land near the town of Dallas.   Plaintiff had pur-
chased the land at a sale under an execution against defendant;
and the defence was, that the premises were defendant's home-
stead.   It was proved that there was no settlement on the land
at the date of the levy; that the land sued for was timbered
land; there was some hewed timber on the ground when the
levy was made, about where defendant's house now stands.
Defendant was living with his family on the land at the date of
the sale, having moved on to the same two days previous, as
soon as the house was completed; and had resided there ever
since; the house was erected in thirteen or fourteen days.   De-
fendant had previously resided in the town of Dallas on rented
property; plaintiff had notice at the sale, that defendant had
moved upon the premises.   Defendant had moved to Dallas in
the winter of 1853 or 1854.   The land was about half a mile
from Dallas.   The judgment under which plaintiff purchased
was rendered in the District Court of Dallas on the 12th of
May, 1854; the levy was made on the 9th of February, 1855;
and the sale on the 6th of March, 1855.

The Court charged the jury without request as follows:—

If the plaintiff has presented and read in evidence a valid

judgment, execution and Sheriff's deed, then he would have the superior title and be entitled to recover unless at the time of his purchase the land sued for was exempt from forced sale.   If the proof shows that at the date of the Sheriff's sale the defendant and family resided on the tract of land, then it was his homestead, and exempt from forced sale.   You are charged that the judgment, execution, and deed are valid and sufficient to authorize the plaintiff to recover unless the property was exempt.

The plaintiff asked the following charge, which was refused:—

That if the defendant was not living on the land and had his homestead on the same at the date of the rendition of the judgment of Hance v. Darnell and the levy of the execution made on the 9th day of February, 1855, defendant moving on to the said land after said levy was made, and before the sale of said land, he, the defendant, is not protected in his homestead under the constitution and laws of this State.   That the judgment and levy was a lien upon said land, and placed the same in the hands of the law and could be sold on said levy.

Verdict and judgment for defendant.   Motion for new trial overruled, &c.

There was a bill of exceptions as follows:—

Be it remembered, that upon the trial of the above entitled cause, the defendant introduced four witnesses to prove that prior to the rendition of the judgment upon which the execution by virtue of which the land in controversy was sold was issued, that said Darnell made a contract with mechanics for the building of a dwelling and other houses suitable for a residence on said land, with the avowed and full intention of making the same his permanent residence, and also to show that said Darnell had no other homestead, that the means arising from the sale of his last homestead had been appropriated in the purchase of his present homestead, the land in controversy, and that he owned no other land or lots, and also that he had continually entertained and expressed that intention, and that he had been continually endeavoring to procure means and materials for that purpose, and that the only reason why a dwelling and other houses suitable for a family residence had not been sooner erected on said land was for the want of lumber and other materials necessary for such purpose, which evidence being objected to by the plaintiff was ruled out by the Court, to which ruling of the Court the defendant excepts, &c.

*B. Warren Stone*, for appellant. In White v. Sheppard (16 Tex. R. 163), the point is settled, that previous equities must be satisfied before a homestead can at all be acquired; and these equities have precedence over the homestead. A Sheriff's levy is much stronger than a bare equity. (4 Bibb, 532.)

A levy of an execution puts the officer in possession of the property (absolutely as to personal property) and the legal possession (by analogy) of real estate. If this be true, no homestead could be legally acquired by defendant. If so, a party can hold two or more homesteads, by moving from one to another after the levy and before the day of sale. Twenty days' notice, as required by statute, for sale, would give ample time to make every necessary move, to defeat the levy. (See 8 Tex. R. 23; 6 Id. 137; 15 Curtis, 325; 5 Dana, 274.)

As the books are meagre in defining a homestead, we reason by analogy from the doctrine of domicil. The authorities on this question have been so often before this Court, in the many applications for land certificates, that it is needless to refer to them in detail. Story, Conf. Laws, page 60, holds "That the mere intention to acquire a new domicil, without the fact of an actual removal, avails nothing. Neither does the fact of removal without the intention." The doctrine then is, that actual possession and intention (*animo et facto*) must concur to constitute domicil. The authorities prescribe narrower limits for a home or homestead than for domicil. (See Am. Lead. Cases, Hare & Wallace's Notes, page 713.)

*McCoy, Nicholson and Naylor*, for appellee. (The Reporters regret that owing to the length of the very able argument of the counsel for appellee, they are unable to insert it.)

HEMPHILL, CH. J. The Constitution declares that the homestead of a family, not to exceed two hundred acres of land (not included in a town or city lot or lots) in value not to exceed two thousand dollars, shall not be subject to forced sale for any debts hereafter contracted. Where the land of a defendant in execution is sold for the payment of debts contracted since the time the Constitution went into operation, and the land is claimed by him as exempt under the homestead right from forced sale, it would seem that the only question which can arise (except where the vendor of the land is enforcing by process of law the payment of the pur-

chase money) is this: Was or was not the land or the lots the homestead of the debtor at the time of the forced sale ? If it were his homestead at that time, it seems incontrovertibly clear under the Constitution, that it is not subject to forced sale.

We have held in repeated cases in favor of the vendor, that his vendee, as against him, could not claim the exemption or be shielded under it from the payment of the purchase money; but this was on the ground that until such payment the superior right or title in the land remained in the vendor; that the title in fact had not fully vested in the vendee until the discharge of the purchase money; that the claim of the homestead is based on the fact that the land, as against the vendor, is held by an indefeasible title.    But where the homestead is the property of the claimant, can it be sold under process to satisfy the claims or liens of creditors ?    The Constitution emphatically answers that it shall not be subject to forced sale for one's debts thereafter contracted. The right to the homestead is placed by the Constitution above any claims or liens for the satisfaction of debts.    If this were not the rule, no debtor could ever procure a homestead until he discharged all previous judgments, for they are liens upon his lands, or until he had paid all judgments rendered since his purchase of lands, but before he had or was able to erect a dwelling-house on the portion selected by him for his homestead.    The very object of the provision was to secure an asylum for the family, whether the head of the family owed or did not owe debts, or whether the debts were or were not in judgments.

But it is not material that there should be comment on the noble and philanthropic purposes of the provision, its wise and sound policy, &c.    It is sufficient that in the plain, clear terms of the Constitution, the homestead cannot be sold by the officers, and through the process of the law, for the payment of debts; and the time of the sale is the time to which we must look in ascertaining the fact whether he did or did not have a homestead. This is the general principle.    There may be, and doubtless are, exceptions; as for instance, where one removes from his former homestead and fixes his residence on a portion of his lands upon which there had been a levy.    Such proceeding would be regarded as fraudulent, which might be shown by the purchaser at the Sheriff's sale, and would protect his title against the claim of homestead thus fraudulently acquired.

This is but an instance of the grounds on which a fraudulent or unjust claim to a homestead may be defeated.

Stone v. Darnell.

But no such fact is shown in this case. The facts as detailed in the statement are somewhat meagre; but enough appears to show that the defendant in the execution had no homestead prior to the one he now claims; that he was living in rented houses up to his removal to the lot in controversy. The charge of the Court, complained of by the plaintiff, is perhaps too general in its terms; but it must be taken in connection with, and as intending to apply to the facts; and as such there was no such error as would mislead the jury or prejudice the plaintiff.

I shall not attempt to ascertain upon what ground the Court excluded the evidence offered by the defendant to prove that he had bought the land, and had made a contract with mechanics to build him a house, previous to the date of the judgment, with the avowed intention of making it his residence; that he had no other homestead, that the means arising from the sale of a former homestead had been applied to the purchase of this land; that he had continuously avowed his intention, and that the only reason why he had not sooner erected a dwelling-house was for the want of lumber and other materials.

Certainly the evidence would have been important to the defendant, to show that his claim was of a character which would put to rest all complaint by the plaintiff, that he had been entrapped, or did not know that this tract would be claimed by the defendant as being under the exemption.

But on the general principle before stated, that a homestead cannot be subject to forced sale for the payment of debts, we are of opinion that there was no error in the judgment, and that the same be affirmed.

Judgment affirmed.